Good morning, Your Honor. Rebecca Ricketts for Appellant Joseph Kennedy. With the Court's permission, I'd like to reserve five minutes for rebuttal. Keep your eye on it. We'll do our best to help you. Thank you, Your Honor. May it please the Court, this case is about Coach Kennedy's First Amendment right to take a knee on the field at the end of the game and say a silent prayer that lasts 15 to 30 seconds. Counsel, I hate to interrupt you with your starting point, but that's what you indicated in the complaint as well, and I am puzzled by that because, in fact, I want to read here paragraph two. It says, this case is about Coach Kennedy's right to pray quietly and alone at the conclusion of BHS football games and to do so on the field where the game is played. Coach Kennedy sincerely held religious beliefs compel this brief private religious expression. I want to go through some and try to understand them from the record. I'm sorry, I have to read a little bit of this, but this is very important to me, at least in terms of my analysis of the case, and I'd like you to tell me what portion of what I'm going to read, if any, is incorrect. First of all, on October 14, 2015, Hiram Sasser, Deputy Chief Counsel of the Liberty Institute and also for Mr. Kennedy, stated as following in the last part of his letter, beginning on October 16, 2015, Coach Kennedy will continue his practice of saying a private postgame prayer at the 50-yard line. Secondly, Mr. Kennedy let it be known to numerous people personally and on social and other media what he intended to do on October 16, 2015. Promptly after the conclusion of the game on October 16, 2015, Coach Kennedy went to the 50-yard line but was surrounded by, by my count looking at the photo attached as Exhibit 1 to the defendant's response to the plaintiff's motion for a preliminary injunction. He was surrounded by 21 football players, 16 other adults, four of whom were using video cameras to photograph the event. He prayed audibly. In a letter dated October 23, 2015, Superintendent Aaron Lavelle, I hope I pronounced that right, Superintendent of the School District, gave Mr. Kennedy the following admonition. While on duty for the district as an assistant coach, you may not engage in demonstrative religious activity readily observable to, if not intended to be observed by, students in the attending public. You may not repeat your conduct of October 16, 2015, for the reasons discussed in the letter, given the severity and likelihood of liability faced by the district in the event of further violations of these activities. Any further violations will be grounds for discipline up to and including discharge from the district employment. It is my hope that you will choose to honor these expectations and continue your positive work with the VHS football program for the remainder of the season. I'm almost done here. On October 28, Superintendent Lavelle sent Mr. Kennedy a letter in which he said in part, rather than contact me or use any of the offered accommodations, on October 23, 2015, while still on duty, you kneeled on the field and prayed immediately following the varsity football game. Further, on October 26, 2015, while still on duty as the head coach of the junior varsity team, you kneeled on the field and prayed immediately following that game while your players were still engaged in postgame traditions. You then rejoined your players for a postgame talk. Your conduct on both occasions was in direct violation of the directives set forth in my October 23 letter. Effective immediately, pending further district review of your conduct, you are placed on paid administrative leave from your position as an assistant coach with the Bremerton High School football program. I apologize for that long recitation, but I think for all of our purposes it's important to get what the facts are out. So first of all, is anything that I said inaccurate? No, Your Honor. Okay, so given that fact, is what happened on October 16, 2015, what he means by his right to, in quotes, pray quietly and alone? No, Your Honor, it's not, and I'm glad you brought up the October 16 picture. I'd like to address it directly. We think the way that the school district has tried to characterize this particular picture is misleading. The district's own statements make clear that Coach Kennedy was suspended for kneeling on the field and praying by himself. That's in the record at 179 and 182. That's what Your Honor just alluded to. Are we bound by what the district concedes from your perspective? No, Your Honor, of course not. This court conducts its own constitutional analysis. However, the school district's contemporaneous descriptions of the facts, I think, are illustrative. Speaking specifically, so point number one would be, Your Honor, the only practice we seek to vindicate here is that of Coach Kennedy to kneel silently and pray by himself for 15 seconds on the field. What does that mean when you say by himself? The school district had, I think, their briefing certainly argues that they had agreed to an accommodation, which is that Coach Kennedy could engage in this prayer after the players had been dismissed from the locker room and after the fans had gone home. So basically when the stadium wasn't full of people anymore, and now you're saying, you're silent prayer where he is alone, but alone, surrounded by the fans in the stands? Your Honor, if I could clarify one point. The district never actually offered an accommodation for Coach Kennedy to pray on the field at a particular point in time. The accommodations they offered were for him to go to the press box or at the athletic building further away from his students and then return to the field. I'm sorry, forgive me for interrupting, but wasn't there a time in this sequence where he was aware of the school district's concerns and so he was praying in the way you describe on the field after the fans had left the stadium and after the players had left the locker room? Your Honor, there was a brief period of time where Coach Kennedy tried to leave the field and then come back hours later in order to pray. He came to the conclusion that that was inconsistent with the religious commitment that he had made. Let me speak specifically. Okay, so before I release this point about alone and what alone means, that's what I think alone means. That's what I have in mind when you say alone. And in response to Judge Smith's question about that your client was dismissed for praying alone, my understanding is that on the day that we were talking about in that photo, you've just described that as praying alone, but he was surrounded by several hundred people. So can you clarify that for me? Absolutely, Your Honor. Speaking specifically to October 16th, and I'd like to turn to October 23rd, which was the letter that Judge Smith read from earlier. The reason the photo of the October 16 game exists, the one that's in the record, the one that district relies on extraordinarily heavily here, is that after that game, Coach Kennedy was joined by the other team. It's not alone. The point is that there were fans in the stand and that's part of... Your coach Kennedy was suspended after the October 16th game. On October 23rd, in the record at 179 and 182, Coach Kennedy knelt by himself silently and alone on the 50 yard line while his players were engaged elsewhere in other postgame activities. Well he wasn't by himself, though. That's what we're having trouble with. He was surrounded by several hundred people, right? No, Your Honor. Not in direct proximity. He waited to engage. He understood the district's directives not to involve students in his religious expression and he complied. By the school district's own admission, he complied with those directives because Coach Kennedy has no religious conviction that requires him to pray with students. When when he when he spoke to other people and social media got involved and people I don't know whether these were, you know, television channels involved, but there were certainly media there taking pictures. When he put it out that he was going to, in quotes, defy the school district, is that part of the religious conviction or are you simply saying I believe what I believe and I'm going to do it? No, not at all, Your Honor. The only publicity we would submit here associated with this case is the direct result of the school district's attempt to ban his religious expression by himself. Okay, so in other words, since the fact that I have in the record that his counsel stated that an accommodation that did not allow Kennedy the spotlight on the 50-yard line immediately following games would be unacceptable to him. Is that right? Your Honor, that's not the conduct that we've sought to vindicate with a preliminary injunction and it's certainly not the conduct that's banned by the district court's rule below. Let's assume for a moment that the injunction is not part of this and we're just looking at this ab initio. If Coach Kennedy said, it doesn't matter what you say, my religious convictions require me to pray on the 50 yard line immediately following the games, I won't bring anybody else involved. If they show up, that's their problem, but if I do that, you can't stop me and I can continue to be employed indefinitely without regard to that conduct. Is that his position? No, Your Honor. We're not asking this court to enunciate a prayer in any manner of his choosing at any time of his choosing. Let's take the one that she says, praying by himself on the 50-yard line for 15 to 30 seconds or was it 30 to 60 seconds? 15 to 30, Your Honor. Okay. If he says that's what I'm going to do, you can't stop me within the constitutional limits. Is that a correct understanding of his position? No, Your Honor, I don't think so because the inquiry that is instructed at step two of the Ng analysis, so if I could back up just for a minute to the antecedent question, the critical question at step two is whether the speech at issue is within the ordinary scope of Coach Kennedy's job responsibilities. Was he an employee at the time he did it? Your Honor, there's no dispute that Coach Kennedy was employed by the district at the time of the religious expression. And was he observed by other people in the stands? There's no dispute about that, Your Honor. I do have one related question. The briefing refers to him as Coach Kennedy repeatedly. Was he also a teacher on the faculty or just a coach on the field? He was a coach, Your Honor, a part-time coaching position. Thank you. Could any private citizen do what he wanted to do and not be an employee of the district? Your Honor, the record's unclear about that. The answer probably turns on the specific time period at issue. The district had a practice of opening the field previously for members of the but that is not... Was it not because the Satanist group wanted to come on and do the same thing and they said I can't do that? Yes, Your Honor, but respectfully the Satanist group have nothing to do with the conduct at issue here because this court has specifically instructed that public employee speech analysis does not turn on the forum. No, I get that, but when you look at Johnson and what happened there, I guess what it really boils down to is how we construe the role of a coach, just like the district judge did. Most all of us played sports. We've had coaches. Does our analysis turn then on our view of whether a coach is ever in quotes off-duty when in this case he is in the school grounds, around the players, around the stadium, and so on? Your Honor, we think the question is not whether he is on or off duty and we think that is exactly the error that the district court committed. The district court held that because Coach Kennedy was on the job when he knelt to pray that his speech was unprotected, but whether he was on the job does not answer the question that is compelled by the Supreme Court's decision in Lane, which is whether his speech was within the scope of his ordinary job responsibilities. Right, and to that point, I think you make a really interesting point right here in your argument, in your briefing, but a coach isn't like a math teacher or as a part of his job duty, inspirational speech to teach camaraderie and teamwork and sportsmanship, for example. I mean, it's a really different hat that he's wearing. Doesn't that cut in favor of the opposing counsel's argument? Your Honor, we think not on the facts of this case. What this court held en banc in Dahlia is that it is insufficient to rely on a broad court-created job description that is applicable to every member of a profession. Yeah, I don't mean to suggest a job description, but I'm talking about this speech in particular. In other words, while he was still shepherding his team, as they were still, you know, during the game and then off they go to the, I think the correspondence indicates the district said, until the players go back to the locker room and they're discharged from the locker room, you're still being a coach, right? I think that was the district's position. Do you want to respond? Yes, Your Honor. We think the  court doesn't conduct an analysis about the scope of Coach Kennedy's job responsibilities is because he said, I just think that case doesn't apply. So what the district court instead did is take his role as a coach and treat that as, quote, determinative of the issue here that's in the record at 44 and 24. And respectfully, Your Honor. Isn't the issue, though, the totality of the circumstances? Don't we have to consider, for example, that Coach Kennedy, in fact, prayed with players for over eight years in the locker room and prayed with them out on the on the field. I frankly have some questions for the other side about that. I'm stunned that nobody said anything, but the reality is that's what happened. Don't we take that into account in our analysis of what was happening here? Your Honor, it's step four of the inquiry, which goes to what the reasonable observer would understand. You're absolutely right that the reasonable observer would know the full history, but it would know the full history that the school district has tried to put forward. How does the full history help you? Your Honor, the full history absolutely helps us because it demonstrates that Coach Kennedy complied with the school district's directives not to involve students in his religious expression. The reasonable observer will also understand that there is no evidence that any students were ever coerced or actively encouraged to participate. I didn't see any evidence that students were actively coerced, or I agree with that, but your first sentence was that, your first statement was that there's no evidence that he prayed with the students, and I thought that there was evidence that in earlier in the locker room that he did audibly pray with the students. If I said that, Your Honor, I misspoke. What I intended to say was that Coach Kennedy complied with the district's directives not to pray with the students. So when you got to the recent events in this October correspondence, but it had gone on for several years to judge Smith's point, is that right? That's exactly right, Your Honor, and the story is essentially a story of a layperson who was learning about the law in pieces. So the district tells him not to involve the students and he complies, and that is fully consistent with his personal religious conviction, which is simply to kneel silently for 15 seconds on the field after the game. No matter what the religious conviction is, you've spoken of, I have no doubt, a sincerely held belief to go out and pray. If he were Muslim, for example, and he went out there and got a prayer rug and faced Mecca and prayed, would it make any difference? No, Your Honor, we think it wouldn't, and we think the rule that the district court articulated here would equally prohibit anyone from wearing religious garb or engaging in so much as a 10-second lunchroom prayer because, again, the district court treated his role as coach as dispositive. We think that's error. With the court's permission, I'd like to reserve the balance of my time. Go ahead. You want to save your time, you said? I'd like to reserve if that's okay, Your Honor. I'm sure that's fine. Thank you. We'll hear from the school district. Good morning. I'm Michael Tierney, representing the Bremerton School District. We are splitting our time today with... Excuse me, would you please raise the mic? I can't hear you. Thank you. Let me know if it doesn't work. Oh, I can hear it now. This case asks whether a federal court should order a local school district to surrender control of its football stadium and its postgame traditions by allowing an employee to include in the postgame ceremonies, against the wishes of the district, a display of unmistakably religious conduct at the center of the football stadium while clothed in the school insignia. Counsel, before you get too much farther, I have to ask this. I used to represent school districts in part when I was practicing in private law, and when I read that Coach Kennedy met with his players and prayed with them in the locker room and was out in the field doing what you're saying he's doing now, and nobody said anything to the contrary, I'm stunned. I'm frankly stunned. And what was said was somebody from another district made a comment about it. What role, if any, in our analysis of whether what Coach Kennedy did was improper should be nothing for the same conduct or more for over eight years? I don't know if it has any role in your analysis as to whether the district had done something previously or not. I think there's no dispute the district did not, was not aware of it, whether it was... I find that hard to believe. Didn't the superintendent go to football games? I believe so. Well then why didn't you see that Coach Kennedy was out on the games in those days was that the players would gather, and sometimes players from the opposing team, and Coach Kennedy would give basically an inspirational speech that segued into prayer, and I think he admitted that it more or less amounted to prayer, but from an outside observer it just looked like an inspirational speech where the coach held two helmets up, and I think that's what the district's response was. I think what it shows is that the district certainly was not looking for a problem here. It wasn't out searching for some way to squelch anyone's religious expression. I respect that, but I'm troubled by the fact that what I understand from the record to be an official from another school district observed the very same thing that your school district superintendent and others observed and thought it was a problem. There's no constitutional estoppel as far as I know, but if there were, that would create a problem for you, wouldn't it? Well certainly if there was sort of estoppel, it would create a problem, but I think the record here is that when the district found out about it, it acted. So if we if we find it incredible that they didn't know about it, what do we do with that? I don't know. I don't know that there's anything that you do with it. I don't think you can create a doctrine of estoppel based on that belief, but there's there's support other than the fact that it seems unlikely that the district knew about this and and actively did not care. I mean when it came up, the district responded. There's never been anything in all the controversy that grew up about this. Nobody ever stepped forward and said, well you know we talked about this five years ago and you didn't do anything about it. That's never come up and believe me this has generated a ton of heat. If that information was out there, somebody would have stepped forward and and and called the district on it and it hasn't happened. Now I agree that it is and I represent school districts sometimes in a day-to-day fashion, but more often in as litigation counsel and the same I had the same response. Maybe 20 years ago somebody might not have noticed it, but nowadays. I hate to interrupt you. Assuming a coach has a special role with respect to students in the sense of the coach is a mentor and students want to be accepted, is there anything that he could say that would be outside the scope of his duties as a coach that therefore would be protected? Well I think there's things he could say, but it's all context sensitive and I think this is why there's such a long discussion about that in the Johnson versus Poehwe case is that it that it that the coaches are that in this case the teacher's role is so pervasive that there has to be an examination of where he is, where the students are, whether he's in a official role at the time or not. I think all those factors you could you could create hypotheticals where the coach, for instance, if he's doing some sort of basically chores for the district, striping the field or something, he's not acting as a coach and some students happen to come by. I think that's a much different situation than when he's on the field in his coaching gear in one of these few occasions, ten occasions a year, where there's a postgame celebration. The fact that he came back to the football field, what's crucial to the context of your argument? I think it shows that the district had no opposition to him using the field at a different time and place, but the time and place that he chose was so highly public and so much in the vicinity of the students that it did create the risk of an establishment. I think opposing counsel raises a really good argument. It's the same hypothetical I've been around with my law clerk for the last few weeks, and that is a public employee whose duty as a teacher is to monitor the lunchroom. If that teacher sits down to eat her own lunch but bows her head to give thanks for her meal, surrounded by students, is that going to cross the line? Personally, I don't believe so. I think we would need more facts to see what exactly was going on there, what the scope of monitoring the the lunchroom is, but I think in that moment, I know it's a different story if we gather the students to the table and we sit down and the teacher bows her head. Okay, so one hypothetical, forgive me for interrupting, but your time is ticking. It sounds like one hypothetical is a more private moment because the teacher's doing this, it's a prayer. This hypothetical is not an audible prayer, but it's a student's, but there isn't a request that the students join. Well, I think the prayer in front of the students issue has been litigated in other cases, and the holdings have been that even that creates a subtle pressure on the students to either participate or it can be a sign of endorsement, but again, I think it's very fact-sensitive. I've read the cases, and what I'm asking you to engage in, if you would, is sort of the spectrum and where it is that you think this particular scenario crossed the line. I think this cross obliterated the line in many, many different respects. If there had been no history, if a new coach showed up next week at Bremerton High School and picked up where this coach left off, so there's no history and there's no audible prayer, but the coach did everything else the same. That, what I think, would mean wearing school colors and praying on the 50-yard line and praying while the fans are still around, but not the players. Would that cross the line? I think absolutely, absolutely. Okay, and can you tell me why? Because the business of the coach, the reason he's hired, is to communicate ideas to the players. That is a shorthand for everything that he does, model speeches, teach football techniques. He's really just like a teacher, but I believe a coach is a teacher plus. Okay, so in this hypothetical, I have the players gone. The players have left the field, but the fans haven't. Does that change your answer? In other words, I'm trying to figure out how important it is to you that the players are present during the prayer. Well, the coach is supposed to be questioning the players. Well, it's not hard. I mean, there's a coach, there's an assistant coach, one of them, you know, the sort of team is headed towards the locker room and one coach just lags behind for a minute, let's say, on the 50-yard line. But, but in front of the other students and the fans, what happens then? Well, I think there's two pieces of that. One is the Establishment Clause question, and I think there still is a danger of an Establishment Clause violation there because he nonetheless is a coach acting in his gear, occupying the public space to the exclusion of all other private speakers. I think that's an Establishment Clause violation, but I believe that what you're trying to get at is whether or not he's speaking as a public employee or a private citizen. Can I get to a part of that? I asked opposing counsel about whether a private citizen could go on the field and do what Coach Kennedy did. We talked a little bit about what the Satanist Group did, but will you tell me what the school district has done, particularly to exclude and prevent, in quotes, private citizens from going on the field to do what Coach Kennedy did? Well, there were several things, and it took some preparation because the district initially wasn't really prepared to deal with a crowd control situation like that. What the district did was basically just send out notices through its normal means of publication, notices and that, but it went beyond that. It did robocalls to the families of school district children. It consulted with the police for additional field security. It had signs created and posted around the field saying that the public was not allowed on the field after games, and it put this direction in writing to, it told Mr. Kennedy that the field was definitely not an open forum for invitation to the public. So the district took the first steps. Was this done after October 16th or before? Well, the final steps were put in place afterwards. Okay, so if I understand the timing correctly, Coach Kennedy's counsel wrote saying he's going to go to the 50-yard line, going to pray silently. He did so. The school district said, you know, you can't do that. You're going to be disciplined. During that time period after October 16th, you did the robocalls, you sent notices, put something in the paper or something like that that said, hey, private citizens can't go on the field, right? That might, some of that might have started before, but I believe the bulk of it, the great bulk of it was afterwards. And so after that point, when the coach went on the field and prayed, let me get the dates right here, on, let's see, I think October, letter here. I think it was the 23rd and the 26th. Yeah, that's right, the 23rd and 26th, that's right. So by that point, the public had clearly been stopped from going on. Coach Kennedy could have only done what he did by being an employee of the district. That's your perspective, right? I believe that's correct, Your Honor. I would like to yield the remainder of my time to counsel for the amicus group. Very well, thank you. Good morning. Good morning. May it please the court, Andrew Nellis for amici, religious and civil liberties organizations. I just want to start off with, in response to Judge Smith's question about the time period that had elapsed, I just want to... Counsel, it's really hard to hear you. Oh, I'm so sorry. You can pull that microphone closer as well, but we're just having trouble. Sure. How's this? So I just want to point out that in the Borden case in the Third Circuit, it was actually the case that the school district was unaware of the prayer that was going on there. Very similar case for 23 years. It's certainly extraordinary fact in that case, but it didn't implicate the constitutional analysis in any way. So from your perspective, the fact that substantially the same practice except for no warnings in the locker room and out in the field for eight years doesn't matter. No, and to more to the point, he's looking for prospective relief here. We're talking about something that is an ongoing violation of the Establishment Clause, and certainly, no matter how long it's been going on, the court shouldn't be putting it in place further into the future. And then as to Judge Christen's hypothetical about the lunchroom, I would point out that in Robert Scant's Madigan in the Tenth Circuit, that court found that in that case, a teacher was silently reading a Bible during class time, instructional time, and the court ruled that the school district could prevent that from occurring because the teacher is a role model for the students. Right, but what about the hypothetical where it really is a private moment? In other words, but for the history, people might not even recognize that the coach was praying for, after all, we're talking about 15 to 30 seconds. So if there hadn't been the history, and go back to the lunchroom, if you would, first, a teacher on duty, surrounded by students, duties include monitoring the lunchroom, sits down to eat her meal, but she bows her head for 15 seconds to give thanks. Sure, so there's two separate questions, and the harder one is whether that violates the Establishment Clause. And it's harder because, unlike in this case, you don't have the history, as Your Honor pointed out, and so then the question really is what this teacher is doing, communicating a message on behalf of the school district, that the school district endorses this religious practice. What if the school district issued a statement officially disassociating itself, would that cure the Establishment Clause problems? So two things. In terms of endorsement, I think it wouldn't, and that's because you're dealing with someone who is unambiguously a representative of the school district, and if we're speaking about this case, as Your Honor has discussed already, there wasn't an open forum, or at least there isn't now an open forum on the So for the school district to allow one person to come on, whether they disclaim it or not, is still an endorsement by the school district of whatever conduct is ongoing there. Because they're giving them access to the field? Right, because I mean, even if it weren't, imagine in this context that the disclaimer is so good, it's not even just a disclaimer, it's not even the coach at all, it's a local minister who's coming on and praying. The schools can't do that, that's still an endorsement of religion, and so the fact that... Well, it sort of depends on the context, right? It depends on whether the fans know that's a minister, it depends on whether there's enough context to know that a prayer is going on. There's a lot that's packed in there, right? Yes, that's absolutely correct. It's the reasonable observer would have to know that it is a prayer, it is a religious act, and so I think it's quite clear in this case that everyone's aware of that. For your purposes, the second prong of Ng is further buttressed by the fact that Coach Kennedy is in fact a coach, which is, if you were a teacher plus, and because of the nature of being a coach, he has special duties to inculcate into young people's values and so on, and the district can't be seen from your perspective as including a religious component, is that correct? Yes, that's correct, and that actually brings me back to the second point to Judge Christian's hypothetical earlier, which is that whether or not, and this is the lunchroom hypothetical, whether or not that violates the Establishment Clause definitively, certainly that teacher is on duty at that moment, and so the school district could ask the teacher not to do it, even if it doesn't necessarily violate the Establishment Clause, and that's again under the second prong of Ng, because the teacher is certain. Is it really your position that any time during the eight hour, nine hours that a teacher is at school, that no matter how private a prayer is, that that's going to be an issue? No, not at all. So two things. First is when you say no matter how private, if it's truly private, if there aren't students around, that's a totally different situation. Nothing wrong with the teacher taking it, right, stepping into a truly private area, meaning alone, nobody's there, right, when I say alone, I mean nobody's there, not a problem, right? Absolutely, and that's what the school district offered in this case, of course, as well, and just the second point, as a point of clarification, that that's really just a matter of, that's not even a matter of Establishment Clause law, that's just a question of government employee speech. So, I only have a couple of minutes left, but I just want to point out that there's really two Establishment Clause problems here. There's the fact that what the practice was, and I seem to be echoing a bit, I got just a little bit there, sorry, sorry about that, that it both coerced or put coercive pressure on the players to join when the prayer practice was that, that's one reason it violates the Establishment Clause, but it also violates the Establishment Clause because of that message of endorsement that's being communicated on behalf of the school district. Do we have to find an Establishment Clause violation, or just do we have to find that school was motivated to try to avoid one? That, the latter, Your Honor. This court said, think fairly clearly in Johnson, that an honest interest in ensuring neutrality was enough. It's really just under the fourth prong of Ng, a balancing analysis, and you know, operate the schools, and if they can't really function if they have to tolerate everything that if they don't tolerate it is a violation, and ban everything that if they don't ban it is a violation. You know, this court has called it navigating Scylla and Charybdis, and that's nothing that the school districts are required to do. And so the reason that this issue is so important is that it's a very important issue for the school district to ensure that the schools are in welcoming places for students of all faiths. We list a number of examples in our brief, and Judge McKee's concurrence in the Borden decision showed that when a public school abdicates its responsibility to ensure religious neutrality, you can really have ugly rifts erupting in a school community when members of religious minorities complain about, or even simply separate themselves from, a religious practice that's going on in the school. And so what the Bremerton School District did here was not just within their right, but it was it was their duty, not just under the Constitution, but their duty to their students, to the school, to the entire community of the school district, to ensure that it was a safe place and a welcoming place for students of all different faiths. Can I just ask one more hypothetical, Judge Smith? I think this will probably take us over, but I'll try to be quick. It strikes me that there's an argument to be made that there was a lost opportunity here to teach students about religious tolerance and to teach students about the Constitution. Do you know of any case where a school district has made a public statement, whether it's in a lunchroom or on a football field, that the school doesn't endorse any particular method of giving thanks, but that in this country people are allowed to give their thanks in their own way? So I think there are cases that this court has seen where you have an Establishment Context, Establishment Clause Context sort of disclaimer, but it's not cases where, it's not cases like this one, where you have, as I said, the coach has this privileged position to come onto the field, it's not open to the public. What you have is, in cases like Hills, you have a, there's a limited public forum that's being opened up, so in that case it was about third party organizations have flyers that they were distributing in the schools, and the court said the school district can disclaim that. They can say, you know, these flyers aren't from us, they don't represent us, and different organizations can then put the flyers in the schools. And similarly in Prince, which dealt with student clubs, student groups, and there was an issue with a Christian student group, and the court said, again, you have a limited public forum for student groups, and it's not, it's not, there's no teacher involvement, it's not school-sponsored, it's entirely student-led, student-initiated, and so that's another place where it's appropriate for a disclaimer. When it's the employee of the school district in a privileged position, a disclaimer doesn't go far enough, and I think in County of Allegheny, it was the Supreme Court said, when you have a strong message of religious endorsement, a disclaimer just doesn't cut it. Other questions, one of my colleagues? Thank you very much. Thank you. We now have some rebuttal. Thank you. You can move that down if you want to, if it's more comfortable. Thank you, Your Honor. Three points, briefly. First, about the scope of the duties. Second, about the establishment clause. Third, about the disclaimer. Judge Nelson, you asked opposing counsel whether there was anything that Coach Kennedy could do on the job that would be protected by the First Amendment. His answer, if I understood it correctly, was basically no. If there's conduct that he engages in that may be incidentally observed by a student, the district's position is that may be proscribed without constitutional protection. That is a radical rule, Your Honor, and it is a radical expansion, or rather an undermining, of First Amendment protection for public employees. This court en banc in Dahlia made clear that employers cannot restrict employee rights by creating excessively broad job descriptions, and that's effectively what the district has tried to do here by characterizing Coach Kennedy as a teacher plus. The tremendous irony here, Your Honor, is that they are trying to use his stature in the community to justify a rule that strips him of all constitutional protection, and the rule that they've articulated would equally prohibit a teacher from wearing religious garb or from engaging in any lunchroom prayer that may be observed by a student. Could you imagine that Coach Kennedy could, for example, wear priestly robes if he believed in or if he belonged to an organization where that was part of his practice? Could he wear priestly robes and go on the field and do the same thing that he did without those robes? Your Honor, that would be a different case. You would have to look at the nature of the religious conduct, but we do think the clear implication of the district's rule is that a headscarf or for wearing a yarmulke, because that would be expressive activity that would be incidentally observed by students in the course of his duties. Your Honor, if I could turn briefly to the Establishment Clause. There is no Establishment Clause or even a risk of an Establishment Clause violation here. What the reasonable observer would see would be Coach Kennedy kneeling on the field for 15 seconds. The reasonable observer would at most conclude that he's engaged in a personal moment of silence. Under Santa Fe, no reasonable observer would view that act as a state endorsement of religion. And to know that, Your Honor, you can simply look at what the district itself has said here. The district concedes in its papers below that it is without sufficient knowledge to admit or deny whether Coach Kennedy prayed at all in the game for which he was suspended. Let me ask you something, Counsel. The opposing counsel finally understood correctly and suggested that the court could decide a case based on the second prong of Ng only without getting to the Establishment Clause based upon his role, the totality of the circumstances, and basically insubordination in effect. Do you agree with that? Your Honor, we agree that Ng is a sequential test, so we do have to prevail on both prongs. This court could stop at step two. On the question of insubordination, though, Your Honor, it's very important to note that the district has abandoned any argument. They've never, in the course of this litigation, made any argument that some dereliction of his duty was the justification for their actions here. They've leaned only on the Establishment Clause. One final point, Your Honor, in response to Judge Kristen's question about the disclaimer. Your Honor, this court has said expressly in the Hills case that the desirable approach is not for students about the First Amendment, about the difference between private and public action, about why we tolerate divergent views. The school's proper response is to educate the audience rather than squelch the speaker. Your Honor, we respectfully ask you to reverse. Thank you. On behalf of the court, we want to thank all counsel. I know some of you are probably acting pro bono. We particularly appreciate that, and we also, if you will, celebrate the rule of law. This is how we resolve serious disputes in a court of law, where people can come and make their arguments without swords, without guns, without knives, and we will resolve this issue based upon the law as we understand it. We respect all of you. We respect the fact that this process is incredibly important for our country, incredibly important for the parties, and we commend the lawyers for the excellent job they have done in their arguments and their briefing, and the court stands adjourned.
judges: D.W. Nelson, M. Smith, Christen